# EXHIBIT B

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

IN THE ELEVENTH JUDICIAL CIRCUIT
ST. CHARLES COUNTY CIRCUIT COURT
STATE OF MISSOURI

| | | |
|---|---|---|
| NICHOLAS A. MELTON, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. |
| | ) | |
| RVO HEALTH, LLC, | ) | |
| | ) | |
| Serve: | ) | |
| | ) | |
| 1101 Red Ventures Drive<br>Fort Mill, South Carolina 29707 | )<br>) | |
| | ) | |
| Defendant. | ) | |

**PETITION**

COMES NOW Plaintiff Nicholas A. Melton, by and through counsel, and for his Petition against Defendant, states as follows:

1. Plaintiff Nicholas A. Melton is a natural person residing in and a citizen of St. Charles County, Missouri.

2. Plaintiff worked for Defendant from his home office in St. Peters, Missouri, where the challenged employment decisions and resulting injuries affected him.

3. Defendant RVO Health, LLC is a Delaware limited liability company headquartered at 1101 Red Ventures Drive, Fort Mill, South Carolina 29707.

4. During the relevant period, Defendant employed more than 500 employees and operated an enterprise affecting interstate commerce.

5. Defendant was Plaintiff's employer under the Americans with Disabilities Act, 42 U.S.C. §§ 12111(5) and 12112, and the Missouri Human Rights Act, Mo. Rev. Stat. §§ 213.010(8) and 213.055.

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

6. Defendant acted through officers, directors, managers, Human Resources and other agents acting within their authority.

7. This Court has subject matter jurisdiction under article V, section 14 of the Missouri Constitution and Mo. Rev. Stat. § 213.111.

8. Venue is proper under Mo. Rev. Stat. § 213.111 because Plaintiff lived and worked in St. Charles County, where Defendant committed the alleged practices and the events and injuries substantially occurred.

9. On August 14, 2025, Plaintiff timely dual filed a Charge of Discrimination No. 560-2025-01627 against Defendant with the Equal Employment Opportunity Commission and Missouri Commission on Human Rights.

10. On March 29, 2026, the Equal Employment Opportunity Commission issued a Determination and Notice of Rights authorizing suit. Plaintiff subsequently received a Missouri Commission on Human Rights notice of right to sue. Exhibit 1.

## FACTUAL BACKGROUND

11. Defendant hired Plaintiff as a full time exempt Senior Platform Engineer effective June 27, 2023.

12. Plaintiff brought to the position substantial experience in cloud infrastructure, platform engineering, automation, infrastructure-as-code, software development, systems administration, and cost optimization.

13. Plaintiff's duties in the position covered cloud architecture, observability, delivery, operations, security, compliance, and continuous improvement.

14. Plaintiff successfully performed the position's essential functions and received exceeding expectations ratings in 2023 and 2024. His 2023 review praised

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

dedication, responsibility, a solution oriented approach, cost savings, and infrastructure-as-code expertise. In 2024, he scored 4 of 5 overall: "Exceptional" for Leads with Solutions; "Exceeds Expectations" for High Degree of Judgment and Yearns for Development; and "Meets Expectations" for Team-first Mindset and Hits Results.

15. Before Plaintiff disclosed disability accommodation needs and discrimination concerns, Defendant identified no performance or conduct problem with Plaintiff.

16. On January 22, 2025, a public team channel praised Plaintiff's work on an EKS TFE migration.

17. On February 5, 2025, Director of Platform Engineering Mike Saraf wrote, "your performance is great, and you have nothing to prove."

18. On February 14, 2025, manager Mishka Badyelkhan wrote that development team retrospectives gave Plaintiff shoutouts and he was "definitely making an impact."

**A. Defendant's Knowledge of Plaintiff's ADHD and the 2024 Workload.**

19. Plaintiff has attention deficit/hyperactivity disorder and attention deficit disorder (collectively, ADHD), which substantially limit concentrating, thinking, learning, organizing, maintaining focus amid interruptions, and neurological or brain function.

20. In 2024, Defendant restructured teams, reassigned technologies and projects, and required engineers to support former teams while working shifted schedules on new assignments. Plaintiff faced frequent interruptions, competing priorities, rapid context switching, and unstructured work. Plaintiff received materially more work than his

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

two closest peers. The volume and lack of structure aggravated his ADHD limitations, mental health, focus, and functioning outside work.

21. Plaintiff's healthcare provider changed his medication from Adderall to methylphenidate, then Vyvanse, then back to Adderall; methylphenidate caused sedation and impaired normal functioning. Plaintiff told Badyelkhan and Saraf about his ADHD, medication changes and effects, need for temporary leave and project transition, and took about one week of leave in July 2024.

22. On July 15, 2024, Saraf acknowledged Plaintiff's ADHD and medication side effects in writing.

23. After Plaintiff returned to work, Badyelkhan assigned more work than both his peers combined. Plaintiff repeatedly described the disparity and overwhelming effects to her and Saraf, who agreed the volume was excessive.

24. Badyelkhan continued the assignments, removed story-point estimates exposing the disparity, and changed key tickets from "None" to "1," understating Plaintiff's work and skewing metrics. Although she said she needed Plaintiff's help scoping tickets because she was unfamiliar with the technology, she continued loading his sprints beyond both peers combined and told him to remove unfinished work, preserving a never ending prioritized queue without needed clarity, structure, or sustained focus.

25. With Plaintiff's agreement at that time, Saraf consulted Chief Security Officer Alfonso Cabrera and proposed a transfer to the Red Platform team as the solution.

**B. The Red Platform Transfer and Denial of Meaningful Onboarding and Support.**

26. Plaintiff accepted the transfer around December 2024 to resolve workload and support problems. His unchanged title now covered unfamiliar products, codebases,

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

infrastructure, workflows, Apache Kafka, and other data platform systems. Badyelkhan remained his manager and Saraf the responsible director.

27. Badyelkhan assigned both teams' work, and Defendant then required Plaintiff's production without reasonable time to learn new systems, developer teams, or technology. Plaintiff requested ramp-up, structured onboarding, peer programming, engineering shadowing, and clear boundaries, but received none.

28. At least two engineers joining Plaintiff's former team received shadowing, peer programming, access help, code reviews, and learning time. Plaintiff received less support but continued technical work and sought a solution.

**C. Plaintiff's Internal Complaints and Defendant's Disability Notice.**

29. On January 29, 2025, Plaintiff complained to Human Resources Compliance about harassment, bullying, unequal workload, denied support, and transfer implementation. He also described effects on his mental health, well being, and performance.

30. Defendant promised a response within 48 hours but provided none until February 11, 2025, almost two weeks later.

31. Before a February 18 meeting, Plaintiff submitted a "Potential Retaliation" summary concerning workload, denied support, discrimination, and health effects. At the meeting, he raised discrimination, retaliation, harassment, bullying, and health concerns.

32. On February 19, 2025, Employee Relations Manager Katarina Hier documented Plaintiff's health disclosure and directed him to seek accommodation for schedule or duty changes so Defendant could provide support.

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

33. Defendant opened an investigation around February 19, estimated one month for review, but closed it March 13 without reinterviewing Plaintiff about his evidence or addressing material workload or comparator information. After closure, Plaintiff supplied rebuttal evidence, screenshots, dates, and context in response.

34. On March 13, Plaintiff disclosed that workplace stress and denied support had contributed to his earlier medication changes and that these continuing challenges made him fearful of another medication change. A March 20 summary alleged failure to accommodate, retaliation, discrimination, and conflict of interest. On March 21, he objected to relying on implicated managers in the decision-making on these issues and leaving his questions unanswered.

35. On March 21, 2025, Senior Human Resources Director Jordan Byrd criticized Plaintiff for "continuing to spend more company time crafting emails" rather than core duties, treating Plaintiff's complaints and investigation participation as lost time.

**D. Plaintiff's Formal Accommodation Request and Medical Documentation.**

36. On March 16, 2025, Plaintiff formally requested ADHD and ADD accommodations, noting Badyelkhan and Saraf already knew the condition and effects. On March 20, he reiterated their knowledge of his diagnoses, work and mental health effects, and medication adjustments.

37. On March 25, 2025, Plaintiff completed Defendant's Lincoln Financial Group process under Event No. 17098579, stating: "My ADHD/ADD affects focus, organization, and handling unstructured tasks, making interruptions and unclear priorities challenging. Accommodations like structured onboarding, task clarity, and learning time help me perform effectively." He requested structured onboarding, clear and separated

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

tasks, sustained learning time, reduced interruptions, engineering shadowing, peer support, and sufficient time to learn the unfamiliar stack.

38. Plaintiff further signed the medical release and supplied his provider's questionnaire. His healthcare provider documented permanent ADHD and ADD, the effects of distractions, interruptions, split focus, and abrupt movement between long projects, and the need for longer focus periods, limited disruptions, ramp-up time, peer programming, and shadowing.

39. Lincoln confirmed on May 14, 2025, that it had all required medical documentation and sent its report to Defendant on May 20, 2025.

40. Plaintiff cooperated fully. Yet on May 16, Human Resources representative Frances Krulac said Lincoln lacked paperwork and Defendant had no approved accommodation, contradicting Lincoln's May 14 confirmation. Defendant, not Lincoln, controlled approval and implementation.

**E. Defendant's Promise to Limit Plaintiff Work, Its Reversal, and the April 28, 2025 Written Warning.**

41. While medical review remained pending, Plaintiff met with Saraf, Cabrera, and Senior Human Resources Business Partner Ashley Hamilton on March 31, 2025 about interim workload measures. Hamilton's April 2 expectation reset email addressed productivity, responsibilities, and collaboration.

42. On April 4, Saraf promised in writing to limit Plaintiff to the Make product. On April 11, Badyelkhan added Metadata, CPS, Mario, PIM, Sargent, and Rights API. Plaintiff immediately reported that the promise was not implemented.

43. On April 15, Saraf withdrew the promise. The discussion concerned Plaintiff's effort to obtain the clarity and reduced scope promised 11 days earlier.

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

44. Defendant used the April 15 discussion as the only specific incident in its April 28 Written Warning, which accused Plaintiff of unprofessional behavior, opposition to promotions, and failure to display HLTHY competencies. It recast Human Resources emails about complaints and accommodation as coaching. The warning imposed an 18-month corrective action period and threatened termination.

45. On May 2, after issuing it, Byrd said she would seek specifics from Saraf and Badyelkhan and offered to revise the "coaching" terminology because the cited emails had not been identified as coaching when sent.

46. While the warning relied on alleged misconduct during an attended meeting, later documentation asserted that Plaintiff refused to attend the meeting. Contemporaneous emails confirmed a one-on-one meeting about assignment scope.

47. On May 16, 2025, Krulac declared the warning final, closed the investigation, and refused to identify the incidents or documented behaviors supporting it.

### F. Defendant's June 4 Accommodation Approval and Ineffective Implementation.

48. On June 4, 2025, Defendant approved Training Support, Shadowing Opportunities, Uninterrupted Work Time, Task Separation, and an Extended Timeframe under Event No. 17098579. The approval was not temporary and listed no end date.

49. This accommodation approval provided for a tailored learning plan, proactively scheduled mentoring with prepared topics and summaries, specified uninterrupted learning time, ticket-based task separation, and additional training time.

50. Defendant did not carry out those accommodations and instead relied on a January 21 access checklist directing Plaintiff to join Slack channels, request Fresh Services access, and contact teams.

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

51. Defendant scheduled about one hour of training daily for 10 workdays on top of Plaintiff's project workload, without reducing assignments or deadlines, and required daily Human Resources content check-ins. The training consisted mainly of public YouTube and Apache Kafka website material dated 2023, not a tailored plan aligned with the 2025 certification examination attached to the accommodation.

52. Defendant directed Plaintiff to take the examination after about 10 study hours over two weeks, although the provider stated that tested competencies required 6 to 12 months of hands-on Kafka experience. The certification was not essential, required of peers, or held by them. On June 16, 2025, Nicole Orr confirmed by email that it was not a formal job requirement, but Defendant did not remove the requirement.

53. Defendant initially scheduled 30-minute shadowing sessions with Senior Director Andrew Coulter, who did not perform the relevant engineering work, and Technical Project Manager Alicia Johnson, whose duties did not match Plaintiff's role. Engineer Keith Casamento was added only after Plaintiff objected.

54. Johnson's session covered project management work, Coulter's did not occur, and the brief sessions did not resemble the multi-week peer programming, shadowing, access help, and code review support provided to engineers entering Plaintiff's former team.

55. During a training check-in, Human Resources Director Nicole Orr raised her voice, spoke over Plaintiff, and accused him of disrespect without identifying any statement or conduct. She later called him vague or dismissive but still supplied no specific statement, date, or interaction.

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

56. Plaintiff continued submitting training notes, status updates, accommodation questions, proposed adjustments, and reports of technical barriers through June and July 2025. He asked that no more training blocks be added without workload adjustment and that the non-required examination be removed.

**G. Plaintiff's June and July Work Product and Defendant's False "No Work" Narrative.**

57. Defendant later claimed that Plaintiff performed no meaningful work in May and June 2025 and stopped working during his final weeks, contrary to its technical records and management communications.

58. In fact, Plaintiff pushed approximately 28,200 lines of code on June 23 and June 30. The Python automation inventoried AWS resources across company accounts, produced structured cost and operational data, preserved snapshots, and supported future observability dashboards.

59. Plaintiff completed or advanced RPE-643 user-acceptance testing from June 26 through June 30, and Defendant merged his code on July 1, 2025. He also created PowerShell automation identifying oversized resources, unused EBS volumes and snapshots, and resizing candidates.

60. Plaintiff delivered a reserved instance cost analysis that Saraf accepted and used to purchase capacity.

61. On July 2, Saraf confirmed that Plaintiff was working on RPE-123, a Terraform module for Delta Lake S3 access points involving cross-account policies, infrastructure-as-code, documentation, project integration, and handoff.

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

62. Plaintiff sent a detailed July 3 update on progress, debugging, documentation, inventory cleanup, and handoff. Saraf requested blocker reports and said he looked forward to completion.

63. During the week before termination, Plaintiff completed sprint work and asked Saraf and the project manager for more. They identified backlog items with him on July 10 and July 11, and Plaintiff commented in Jira, requested assignments, and provided updates.

64. Defendant later attempted to treat approved paid time off from May 24 through June 3, all-hands meetings, peer-review blocks, and security software blocks, accommodation training, shadowing, sick time, HIPAA training, management review delays, and unreviewed pull requests as Plaintiff's productivity gaps.

65. Defendant had previously stated that raw lines and output counts did not measure productivity because complexity and scope mattered, but later used raw ticket and output counts to portray inactivity. The work artifacts, accepted deliverables, emails, Jira activity, and requests for work refuted that attempted portrayal.

### H. The July 3, 2025 Escalation, Active Accommodation Review, and July 14 Termination.

66. On June 16, 2025, Orr issued a generalized professionalism reminder based on unnamed coworkers who allegedly viewed some interactions as abrupt or dismissive, but provided no statement, date, context, or example.

67. On July 3, Plaintiff escalated unresolved accommodation implementation, workload disparity, retaliation, harassment, and discrimination to Chief People Officer Nikki Ballard.

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

68. Ballard, then out of office, said she would investigate. On July 8, Shultz stated that Defendant was reviewing Plaintiff's feedback and Lincoln status.

69. On July 10, 2025, Ballard scheduled a July 14 findings meeting, and on July 11, Lincoln Financial Group scheduled a July 14 accommodation call for 10:30 a.m. Central Time.

70. During the July 14 Lincoln call, the representative referenced information suggesting that Defendant characterized Plaintiff as refusing accommodation. Plaintiff corrected the characterization and requested continued accommodation with workload adjustment, relevant shadowing, current training, and removal of the nonrequired examination. Plaintiff also identified his later meeting with Ballard.

71. Both the accommodation process and Defendant's review of retaliation and disparate treatment remained active on the morning of July 14.

72. At a meeting later that same day with Nikki Ballard and Orr, Ballard did not actually review findings or permit further response. She immediately terminated Plaintiff, and Defendant revoked his access when the meeting ended.

73. The separation memorandum cited the April 28 warning, continued unprofessional conduct, failure to perform after support, disengagement, uncooperativeness, and failure to engage in good faith in the interactive process, allegedly leaving Plaintiff unable to perform essential functions. The interactive process rationale had not appeared in the warning, May 16 closure email, or preceding Lincoln communications.

74. The memorandum omitted Plaintiff's June and July work, accepted deliverables, Saraf's July 2 assignment email, his July 9, July 10, and July 11 requests for

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

work, the July 14 accommodation call, Ballard's promised findings review, and Defendant's July 8 consideration of leave or reassessment.

75. Ballard signed the memorandum that afternoon, hours after the Lincoln call and during the period reserved for Plaintiff's escalation. Defendant's reasons shifted from conduct, to productivity, to refusal of accommodation, to failure to engage, while Defendant used Plaintiff's disability needs, accommodation objections, and protected complaints against him as reasons for termination.

76. Plaintiff's ADHD, need for accommodation, requests for effective accommodation, and opposition to discrimination and retaliation were determining and but-for causes of the warning, scrutiny, and termination.

**I. Plaintiff's Damages.**

77. Defendant's termination of Plaintiff ended his salary, benefits, and has harmed his professional standing and career continuity. Plaintiff has sustained and will continue to sustain substantial wage, benefit, and other economic losses into the future.

78. Plaintiff's subsequent employment required a new federal security clearance. Because his prior clearance from work before Defendant did not transfer, he completed a new SF-86, disclosed Defendant's disputed termination reason, and was questioned about it during the clearance investigation. The resulting delay limited his access to classified work and has created continuing problems for Plaintiff based on Defendant's explanation and continues to jeopardize his employment and reputation.

79. Defendant's conduct has caused Plaintiff emotional distress, anxiety, humiliation, frustration, loss of enjoyment of life, and reputational harm.

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

## COUNT I

**(Disability Discrimination in Violation of the ADA, 42 U.S.C. § 12112)**

80. Plaintiff repeats and realleges the above-stated paragraphs as if fully set forth herein.

81. Plaintiff is an individual with a disability because ADHD substantially limits one or more major life activities and major bodily functions, including concentrating, thinking, learning, organizing, working, and neurological or brain function.

82. Plaintiff was a qualified individual who could perform the essential functions of the Senior Platform Engineer position with or without reasonable accommodation.

83. Defendant knew of Plaintiff's disability and related limitations no later than July 2024 and repeatedly acknowledged the need for disability-related work assistance in 2025.

84. Defendant subjected Plaintiff to adverse employment actions, including unequal support, a formal written warning, escalating scrutiny, use of disability-related limitations as performance or conduct faults, and termination.

85. Defendant expressly relied on Plaintiff's participation in the accommodation process and alleged disability-related concerns as grounds for termination.

86. Defendant's stated reasons were false, inconsistent, shifting, and contradicted by Plaintiff's performance history, contemporaneous praise, approved accommodation, continuing interactive-process communications, substantial work product, accepted deliverables, and requests for additional assignments.

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

87. Plaintiff's disability was a determining and but-for cause of Defendant's adverse actions and termination.

88. Defendant acted intentionally and with malice or reckless indifference to Plaintiff's federally protected rights by terminating him during an active accommodation review and after senior Human Resources personnel received repeated written discrimination and retaliation complaints.

89. As a direct and proximate result of Defendant's ADA discrimination, Plaintiff sustained lost compensation and benefits, future pecuniary loss, emotional distress, inconvenience, mental anguish, loss of enjoyment of life, reputational injury, and other damages.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant for disability discrimination under the ADA; back pay, lost benefits, and other equitable monetary relief; reinstatement to a comparable Senior Platform Engineer position or, if reinstatement is not feasible, front pay; compensatory damages for emotional distress, inconvenience, mental anguish, loss of enjoyment of life, reputational injury, and future pecuniary loss; punitive damages because Defendant acted with malice or reckless indifference; reasonable attorney fees, expert fees, and costs; prejudgment and postjudgment interest; and such other and additional relief as this Court deems just and proper.

## COUNT II

**(Failure to Provide Reasonable Accommodation in Violation of the ADA, 42 U.S.C. § 12112(b)(5)(A))**

90. Plaintiff repeats and realleges the above-stated paragraphs as if fully set forth herein.

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

91. Defendant knew that Plaintiff had ADHD and knew that interruptions, unclear priorities, excessive context switching, and lack of ramp-up time materially affected his ability to concentrate and organize work.

92. Plaintiff requested reasonable accommodations, including structured onboarding, clear and separated tasks, relevant engineering shadowing, peer support, sustained focus time, reduced interruptions, and sufficient learning time for unfamiliar technologies.

93. Plaintiff supplied medical documentation establishing the condition, its permanence, the functional limitations, and the requested workplace adjustments.

94. The requested measures were reasonable, available, consistent with support Defendant provided other engineers, and would not eliminate an essential function or impose an undue hardship.

95. Defendant approved the requested categories of accommodation but failed to a large degree to implement them.

96. Defendant substituted an access checklist for structured onboarding, brief non-engineering sessions for relevant shadowing, outdated public material for a tailored learning plan, a two week certification schedule for extended learning time, and additional daily reporting without a corresponding workload reduction.

97. Defendant reversed its promised Make-only scope, continued assigning competing work, failed to reduce deadlines for the training burden, and used Plaintiff's requests to make the accommodation effective as evidence of noncooperation.

98. Plaintiff participated in good faith, completed forms, obtained medical records, attended calls and meetings, documented training, reported technical barriers,

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

proposed adjustments, and corrected Defendant's inaccurate suggestion that he rejected accommodation.

99. Defendant caused the breakdown in the interactive process and terminated Plaintiff while the process remained active rather than identifying and implementing an effective accommodation.

100. With effective accommodation, Plaintiff could perform and was performing the essential functions of his role, as demonstrated by his accepted technical deliverables and continuing work through July 11, 2025.

101. As a direct and proximate result of Defendant's failure to accommodate, Plaintiff sustained lost compensation and benefits, future pecuniary loss, emotional distress, inconvenience, mental anguish, loss of enjoyment of life, reputational injury, and other damages.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant for failure to provide reasonable accommodation; back pay, lost benefits, and other equitable monetary relief; reinstatement or, if reinstatement is not feasible, front pay; compensatory damages for future pecuniary loss, emotional distress, inconvenience, mental anguish, loss of enjoyment of life, and reputational injury; punitive damages; reasonable attorney fees, expert fees, and costs; prejudgment and postjudgment interest; and such other and additional relief as this Court deems just and proper.

## COUNT III

**(Retaliation in Violation of the ADA, 42 U.S.C. § 12203)**

102. Plaintiff repeats and realleges the above-stated paragraphs as if fully set forth herein.

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

103. Plaintiff engaged in activity protected by the ADA when he disclosed disability-related limitations, requested reasonable accommodation, opposed disability discrimination, complained of failure to accommodate, challenged retaliatory discipline, participated in internal investigations, submitted rebuttal evidence, and escalated unresolved accommodation and retaliation concerns.

104. Defendant knew of Plaintiff's protected activity through Plaintiff's written complaints, Human Resources meetings, accommodation forms, medical documentation, rebuttals, and direct communications with management and senior Human Resources personnel.

105. Defendant subjected Plaintiff to materially adverse actions that would dissuade a reasonable employee from exercising ADA rights, including treating protected emails as time away from work, imposing expectation resets, issuing an unsupported Written Warning, threatening termination for 18 months, escalating scrutiny, mischaracterizing accommodation concerns and objections as refusal, and terminating Plaintiff.

106. The adverse actions began after Plaintiff's January and February complaints and intensified after his March accommodation request and protected opposition.

107. Defendant terminated Plaintiff 11 days after his July 3 escalation to Ballard and on the same day as the Lincoln Financial Group accommodation-review call and Ballard's promised findings meeting.

108. Defendant's decisionmakers included senior Human Resources officials and management personnel who received Plaintiff's protected complaints and participated in the challenged accommodation and disciplinary process.

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

109. Defendant's shifting reasons, post hoc collection of warning details, treatment of complaints as lost work time, false "no work" narrative, new termination-day interactive-process rationale, and same-day timing demonstrate retaliatory motive and pretext.

110. Plaintiff's protected activity was a determining and but-for cause of the Written Warning, escalating scrutiny, and termination.

111. Defendant acted intentionally and with malice or reckless indifference to Plaintiff's ADA rights.

112. As a direct and proximate result of Defendant's retaliation, Plaintiff sustained lost compensation and benefits, future pecuniary loss, emotional distress, inconvenience, mental anguish, loss of enjoyment of life, reputational injury, and other damages.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant for retaliation; back pay, lost benefits, and other equitable monetary relief; reinstatement or, if reinstatement is not feasible, front pay; compensatory damages for future pecuniary loss, emotional distress, inconvenience, mental anguish, loss of enjoyment of life, and reputational injury; punitive damages; reasonable attorney fees, expert fees, and costs; prejudgment and postjudgment interest; and such other and additional relief as this Court deems just and proper.

## COUNT IV

### (Disability Discrimination and Discriminatory Discharge in Violation of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.055)

113. Plaintiff repeats and realleges the above-stated paragraphs as if fully set forth herein.

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

114. Plaintiff has a disability under Mo. Rev. Stat. § 213.010(5) because ADHD substantially limits major life activities and, with reasonable accommodation, did not prevent him from performing the essential functions of his position.

115. Plaintiff was qualified for and successfully performed the Senior Platform Engineer position.

116. Defendant knew of Plaintiff's disability, functional limitations, and need for accommodation.

117. Defendant discharged Plaintiff and otherwise discriminated against him with respect to the terms, conditions, privileges, support, discipline, and continuation of employment because of disability.

118. Plaintiff's disability actually played a role in the adverse actions and had a determinative influence on the warning, scrutiny, and termination.

119. Defendant's discrimination was the direct proximate cause of Plaintiff's claimed damages.

120. Defendant's asserted reasons were pretextual because they contradicted the objective work record, prior evaluations, contemporaneous praise, approved accommodation, active interactive process, and Defendant's own assignment communications.

121. Defendant acted intentionally and with conscious, deliberate, and flagrant disregard for Plaintiff's rights under Missouri law.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant for disability discrimination; actual back pay and lost benefits; reinstatement to comparable employment or, if reinstatement is not feasible, front pay; future pecuniary losses,

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, reputational injury, and all other actual damages; punitive damages; court costs and reasonable attorney fees; prejudgment and postjudgment interest; and such other and additional relief as this Court deems just and proper.

## COUNT V

**(Failure to Provide Reasonable Accommodation in Violation of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.055 and 8 CSR 60-3.060)**

122. Plaintiff repeats and realleges the above-stated paragraphs as if fully set forth herein.

123. Plaintiff had a disability that, with reasonable accommodation, did not interfere with his ability to perform the essential functions of the Senior Platform Engineer position.

124. Defendant knew Plaintiff's limitations and received clear requests for structured onboarding, task clarity, relevant shadowing, sustained focus time, reduced interruptions, and extended learning time.

125. Missouri law required Defendant to make reasonable accommodation to Plaintiff's known limitations.

126. The requested accommodations were reasonable, available, consistent with supports Defendant provided to other engineers, and compatible with the essential functions of Plaintiff's position.

127. Defendant approved accommodation categories but failed to provide effective measures, failed to correct known implementation problems, reversed promised scope limitations, and imposed additional training and reporting burdens without reducing Plaintiff's workload.

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

128. Plaintiff acted in good faith and remained able to perform the position with effective accommodation.

129. Defendant used the consequences of its own ineffective implementation as grounds for discipline and discharge.

130. Plaintiff's disability and need for reasonable accommodation actually played a role in, and had a determinative influence on, Defendant's failure to provide equal terms and conditions of employment and its termination decision.

131. Defendant's failure to accommodate was the direct proximate cause of Plaintiff's claimed damages.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant for failure to provide reasonable accommodation; actual back pay and lost benefits; reinstatement or, if reinstatement is not feasible, front pay; future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, reputational injury, and all other actual damages; punitive damages; court costs and reasonable attorney fees; prejudgment and postjudgment interest; and such other and additional relief as this Court deems just and proper.

## COUNT VI

**(Retaliation in Violation of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.070)**

132. Plaintiff repeats and realleges the above-stated paragraphs as if fully set forth herein.

133. Plaintiff opposed practices prohibited by the Missouri Human Rights Act and participated in internal investigations concerning those practices.

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

134. Plaintiff's protected opposition included the January 29 Human Resources complaint, the February 14 allegation of potential retaliation, the February 18 discrimination and health complaint, the March 13 rebuttal, the March 20 updated claim summary alleging failure to accommodate and retaliation, the conflict-of-interest objection, the objections to the Written Warning, the June complaints concerning ineffective accommodation and discriminatory treatment, and the July 3 escalation to Ballard.

135. Those communications did more than request accommodation; they opposed perceived disability discrimination, unequal treatment, failure to accommodate, retaliation, and misuse of Defendant's investigation and discipline process.

136. Defendant knew of the protected opposition because the communications were directed to management, Human Resources, the accommodation team, and Ballard.

137. Defendant retaliated by treating Plaintiff's complaints as lost work time, issuing expectation resets and an unsupported warning, refusing particulars, escalating scrutiny, recasting protected accommodation objections as uncooperativeness, and terminating Plaintiff.

138. Plaintiff's protected opposition actually played a role in the adverse actions and had a determinative influence on Defendant's decision to terminate him.

139. Defendant's retaliation was the direct proximate cause of Plaintiff's claimed damages.

140. The 11-day period between the July 3 escalation and termination, the same-day collision of the Lincoln Financial Group review and Ballard findings meeting, the false

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

work narrative, and the shifting termination reasons demonstrate retaliatory motive and pretext.

141. Defendant acted intentionally and with conscious, deliberate, and flagrant disregard for Plaintiff's rights under Missouri law.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant for retaliation; actual back pay and lost benefits; reinstatement or, if reinstatement is not feasible, front pay; future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, reputational injury, and all other actual damages; punitive damages; court costs and reasonable attorney fees; prejudgment and postjudgment interest; and such other and additional relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a jury trial on all triable claims and issues.

Respectfully submitted,

By: */s/ Kevin J. Dolley*

Kevin J. Dolley, #54132
HKM Employment Attorneys LLP
7382 Pershing Avenue, Suite 1W
St. Louis, Missouri 63130
Telephone/Fax: 314-642-6577
kdolley@hkm.com

*Attorney for Plaintiff*

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS

# MISSOURI COMMISSION ON HUMAN RIGHTS

| | | | |
|---|---|---|---|
| MIKE KEHOE<br>GOVERNOR | ANNA S. HUI<br>DEPARTMENT DIRECTOR | CHRISTOPHER SLINKARD<br>COMMISSION CHAIR | SHANNON THOMPSON<br>ACTING EXECUTIVE DIRECTOR |

EXHIBIT
1

June 24, 2026

Nicholas A. Melton
80B Lost Dutchman Drive
St. Peters, MO 63376
Via Email: nmelton1991@gmail.com

**NOTICE OF RIGHT TO SUE**

RE: Melton vs. RVO Health FE-08/25-39306; 560-2025-01627

The Missouri Commission on Human Rights (MCHR) is terminating its proceedings and issuing this notice of your right to sue under the Missouri Human Rights Act because you have requested a notice of your right to sue from MCHR and/or the Equal Employment Opportunity Commission (EEOC) with whom this matter was dual filed.

This letter indicates your right to bring a civil action within 90 days of this notice against the respondent(s) named in the complaint. Such an action may be brought in any circuit court in any county in which the unlawful discriminatory practice is alleged to have occurred but it must be brought no later than two years after the alleged cause occurred or its reasonable discovery. Upon issuance of this notice, the MCHR is terminating all proceedings relating to the complaint. No person may file or reinstate a complaint with the MCHR after the issuance of a notice of right to sue relating to the same practice or act. You are hereby notified of your right to sue the Respondent(s) named in your complaint in state circuit court. **THIS MUST BE DONE WITHIN 90 DAYS OF THE DATE OF THIS NOTICE OR YOUR RIGHT TO SUE IS LOST**.

You are also notified that the Executive Director is hereby administratively closing this case and terminating all MCHR proceedings relating to it. This notice of right to sue has no effect on the suit-filing period for any federal claims. This notice of right to sue is being issued as required by Section 213.111.1, RSMo, because it has been over 180 days after the filing of this complaint and MCHR has not completed its administrative processing.

In addition to the process described above, if any party is aggrieved by this decision of the MCHR, that party may appeal the decision by filing a petition under § 536.150 of the Revised Statutes of Missouri. Any such petition must be filed in the Circuit Court of Cole County.

(CONTINUED ON NEXT PAGE)

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

RE: Melton vs. RVO Health FE-08/25-39306; 560-2025-01627

Respectfully,

*Shannon Thompson*

Shannon Thompson
Acting Executive Director

CC:
RVO Health
1101 Red Ventures Drive
Fort Mills, SC 29707
Via Respondent Attorney/Contact Email

Heather Kaiser
1101 Red Ventures Drive
Fort Mill, SC 29707
*Hkaiser@rvohealth.com*

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**St. Louis District Office**
1222 Spruce St, Rm 8 100
St Louis, MO 63103
Telephone: (314) 798-1960
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 03/29/2026

**To:** Mr. Nicholas A. Melton
80B Lost Dutchman Drive
Saint Peters, MO 63376

Charge No: 560-2025-01627

EEOC Representative and email: Walter Harris, Federal Investigator & walter.harris@eeoc.gov

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 560-2025-01627.

On behalf of the Commission,

Digitally Signed By:David Davis
03/29/2026

David Davis
District Director

cc: Heather Kaiser Esq.
RVO Health

Please retain this Notice for your records.

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM



# Information Related to Filing Suit Under the Laws Enforced by the EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## Important Time Limits – 90 Days to file a Lawsuit

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## Attorney Representation

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## How to Request Your Charge File and 90-Day Time Limit for Requests

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM



FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 560-2025-01627 to the District Director at David Davis, 1222 Spruce St Rm 8 100, St Louis, MO 63103.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 560-2025-01627 to the District Director at David Davis, 1222 Spruce St Rm 8 100, St Louis, MO 63103.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

## NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.
- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- ✓ **Only one** major life activity need be substantially limited.
- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

Electronically Filed - St Charles Circuit Div - June 26, 2026 - 02:05 PM



**are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.
- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability."

***Note:*** *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

Electronically Filed - ST CHARLES CIRCUIT DIV - June 26, 2026 - 02:22 PM

**IN THE ELEVENTH JUDICIAL CIRCUIT, ST CHARLES COUNTY, MISSOURI**

| | |
|---|---|
| Judge or Division: | **Case Number:** 2611-CC00887 |
| Plaintiff: Nicholas A. Melton | Defendant: RVO Health, LLC |

(Date File Stamp)

# REQUEST FOR APPOINTMENT OF SPECIAL PROCESS SERVER

Comes now Plaintiff Nicholas A. Melton, pursuant to Local Court Rule 4.2.1 and at his/her/its own risk, requests the appointment of:

| Name of Process Server | Address | Telephone |
|---|---|---|
| Adam Elliott, Elliott Process LLC | 6642 Clayton Rd #106, Richmond Heights, MO 63117 | (636) 200-8059 |
| | | |

a person(s) of lawful age to serve the summons and petition in this cause on the below named parties. This appointment as special process server does not include the authorization to carry a concealed weapon in the performance thereof.

**SERVE:**
RVO Health, LLC
Name
1101 Red Ventures Drive
Address
Fort Mill, South Carolina 29707
City/State/Zip

**SERVE:**
Name
Address
City/State/Zip

**Appointed as requested:**

**Cheryl Crowder,**

**Circuit Clerk**

**By** ______________________ **Date** ______________________

Deputy Clerk

# Summons for Personal Service Outside the State of Missouri (Except Attachment Action)

IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>ERIN BURLISON | **Case Number: 2611-CC00887** | |
| Plaintiff/Petitioner:<br>NICHOLAS A MELTON<br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>KEVIN J DOLLEY<br>2726 S. BRENTWOOD BLVD.<br>SAINT LOUIS, MO 63144 | |
| Defendant/Respondent:<br>RVO HEALTH, LLC | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO 63301 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Employmnt Discrmntn 213.111 | | |

**The State of Missouri to**: **RVO HEALTH, LLC**
**Alias:**

**1101 RED VENTURES DR.**
**FORT MILL, SC 29707**

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

***COURT SEAL OF***

***ST. CHARLES COUNTY***

| | |
|---|---|
| 01-JUL-2026 | /S/ CHERYL CROWDER |
| Date | Clerk |

**Further Information:**

**Officer's or Server's Affidavit of Service**

I certify that:

1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is ______________________________ of ____________________ County, ______________ (state).
3. I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:
____________________________________ (name) ______________________(title).

☐ other: _________________________________________________________________.

Served at ____________________________________________________________ (address)
in __________________________ (County), ____________ (state), on ________________(date)
at __________ (time).

______________________________ Printed Name of Officer or Server

______________________________ Signature of Officer or Server

**Subscribed and sworn to** before me this ____ (day) ____________ (month), ______ (year).

I am: (check one)
☐ the clerk of the court of which affiant is an officer.
☐ the judge of the court of which affiant is an officer.
☐ authorized to administer oaths in the state in which the affiant served the above summons (use for out-of-state officer).
☐ authorized to administer oaths. (use for court-appointed server)

*(Seal)*

______________________________
Signature and Title

**Service Fees**

| | |
|---|---|
| Summons | $____________ |
| Non Est | $____________ |
| Mileage | $____________ (______ miles @ $.______ per mile) |
| **Total** | **$____________** |

See the following page for directions to officer making return on service of summons.

Case Number: 2611-CC00887

**Directions to Officer Making Return on Service of Summons**

A copy of the summons and petition must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and petition when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and petition and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and petition personally to the individual or by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person at least 18 years of age residing therein, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and petition to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

The officer or other person receiving a summons or other process shall serve the same and make return of service promptly. If the process cannot be served it shall be returned to the court within 30 days after the date of issue with a statement of the reason for the failure to serve the same; provided, however, that the time for service thereof may be extended up to ninety days from the date of issue by order of the court.

STATE OF MISSOURI )
) ss.
ST. CHARLES COUNTY, MISSOURI )

IN THE CIRCUIT COURT OF ST. CHARLES COUNTY, MISSOURI

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

Pursuant to Missouri Supreme Court Rule 17, the Circuit Court of St. Charles County, Missouri (Eleventh Judicial Circuit) has adopted a local rule to encourage voluntary alternative dispute resolution. The purpose of the rule and the program it establishes is to foster timely, economical, fair and voluntary settlements of lawsuits without delaying or interfering with a party's right to resolve a lawsuit by trial.

This program applies to all civil actions other than cases in the small claims, probate and family court divisions of the Circuit Court, and you are hereby notified that it is available to you in this case.

The program encourages the voluntary early resolution of disputes through mediation. Mediation is an informal non-binding alternative dispute resolution process in which a trained mediator facilitates discussions and negotiations among the parties to help them resolve their dispute. The mediator is impartial and has no authority to render a decision or impose a resolution on the parties. During the course of the mediation, the mediator may meet with the parties together and separately to discuss the dispute, to explore the parties' interests, and to stimulate ideas for resolution of the dispute.

A list of mediators approved by the court and information regarding their qualifications is kept by the Circuit Clerk's Office. If all parties to the suit agree to mediation, within ten days after they have filed the Consent to Mediation Form on the reverse side of this page with the Clerk of the Court, they shall jointly select from that list a mediator who is willing and available to serve. If the parties cannot agree upon the mediator to be selected, the Court will make the selection.

The full text of the Circuit Court's local court rules, including Rule 38 Alternative Dispute Resolution, is available from the Clerk of the Circuit Court or at: http://www.courts.mo.gov/hosted/circuit11/Documents/LOCAL_COURT_RULES.pdf

A copy of this Notice is to be provided by the Clerk of the Circuit Court to each of the parties initiating the suit at the time it is filed, and a copy is to be served on each other party in the suit with the summons and petition served on that party.

STATE OF MISSOURI )
) ss.
ST. CHARLES COUNTY, MISSOURI )

IN THE CIRCUIT COURT OF ST. CHARLES COUNTY, MISSOURI

| | | |
|---|---|---|
| ________________________________ | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Cause #____________________ |
| | ) | |
| ________________________________ | ) | |
| Defendant(s). | ) | |

**CONSENT TO MEDIATION FORM**

I, the undersigned counsel of record in this case, hereby certify that I have discussed the subject of mediation under the Court's Alternative Dispute Resolution Program with my client(s) in this case and that:

_____ We believe that mediation would be helpful in this case and consent to the referral of the case to mediation upon the filing of similar consents by all other parties in the case.

_____ We do not consent to the referral of this case to mediation.

________________________________
Signature

________________________________
(Print Name)

Attorney for:

________________________________
(Party or Parties)

Date: ________________________

STATE OF MISSOURI )
) ss.
ST. CHARLES COUNTY, MISSOURI )

IN THE CIRCUIT COURT OF ST. CHARLES COUNTY, MISSOURI

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

Pursuant to Missouri Supreme Court Rule 17, the Circuit Court of St. Charles County, Missouri (Eleventh Judicial Circuit) has adopted a local rule to encourage voluntary alternative dispute resolution. The purpose of the rule and the program it establishes is to foster timely, economical, fair and voluntary settlements of lawsuits without delaying or interfering with a party's right to resolve a lawsuit by trial.

This program applies to all civil actions other than cases in the small claims, probate and family court divisions of the Circuit Court, and you are hereby notified that it is available to you in this case.

The program encourages the voluntary early resolution of disputes through mediation. Mediation is an informal non-binding alternative dispute resolution process in which a trained mediator facilitates discussions and negotiations among the parties to help them resolve their dispute. The mediator is impartial and has no authority to render a decision or impose a resolution on the parties. During the course of the mediation, the mediator may meet with the parties together and separately to discuss the dispute, to explore the parties' interests, and to stimulate ideas for resolution of the dispute.

A list of mediators approved by the court and information regarding their qualifications is kept by the Circuit Clerk's Office. If all parties to the suit agree to mediation, within ten days after they have filed the Consent to Mediation Form on the reverse side of this page with the Clerk of the Court, they shall jointly select from that list a mediator who is willing and available to serve. If the parties cannot agree upon the mediator to be selected, the Court will make the selection.

The full text of the Circuit Court's local court rules, including Rule 38 Alternative Dispute Resolution, is available from the Clerk of the Circuit Court or at:
http://www.courts.mo.gov/hosted/circuit11/Documents/LOCAL_COURT_RULES.pdf

A copy of this Notice is to be provided by the Clerk of the Circuit Court to each of the parties initiating the suit at the time it is filed, and a copy is to be served on each other party in the suit with the summons and petition served on that party.

STATE OF MISSOURI )
) ss.
ST. CHARLES COUNTY, MISSOURI )

IN THE CIRCUIT COURT OF ST. CHARLES COUNTY, MISSOURI

____________________________________ )
Plaintiff(s), )
)
vs. ) Cause #______________________
)
____________________________________ )
Defendant(s). )

**CONSENT TO MEDIATION FORM**

I, the undersigned counsel of record in this case, hereby certify that I have discussed the subject of mediation under the Court's Alternative Dispute Resolution Program with my client(s) in this case and that:

_____ We believe that mediation would be helpful in this case and consent to the referral of the case to mediation upon the filing of similar consents by all other parties in the case.

_____ We do not consent to the referral of this case to mediation.

____________________________________
Signature

____________________________________
(Print Name)

Attorney for:

____________________________________
(Party or Parties)

Date: ___________________________

Electronically Filed - ST CHARLES CIRCUIT DIV - August 06, 2026 - 02:39 PM

**IN THE ELEVENTH JUDICIAL CIRCUIT, ST CHARLES COUNTY, MISSOURI**

| Judge or Division: | **Case Number:** 2611-CC00887 |
|---|---|
| Plaintiff: Nicholas A. Melton | Defendant: RVO Health, LLC |

(Date File Stamp)

# REQUEST FOR APPOINTMENT OF SPECIAL PROCESS SERVER

Comes now Plaintiff Nicholas A. Melton, pursuant to Local Court Rule 4.2.1 and at his/her/its own risk, requests the appointment of:

| Name of Process Server | Address | Telephone |
|---|---|---|
| Adam Elliott, Elliott Process LLC | 6642 Clayton Rd #106, Richmond Heights, MO 63117 | (636) 200-8059 |
| | | |

a person(s) of lawful age to serve the summons and petition in this cause on the below named parties. This appointment as special process server does not include the authorization to carry a concealed weapon in the performance thereof.

| **SERVE:** | **SERVE:** |
|---|---|
| Name: RVO Health, LLC | Name: |
| Address: 1101 Red Ventures Drive | Address: |
| City/State/Zip: Fort Mill, South Carolina 29707 | City/State/Zip: |

**Appointed as requested:**

**Cheryl Crowder,**

**Circuit Clerk**

**By** ______________________ **Date** ______________________

Deputy Clerk

Electronically Filed - ST CHARLES CIRCUIT DIV - August 06, 2026 - 02:39 PM

# IN THE ELEVENTH JUDICIAL CIRCUIT COURT
# ST. CHARLES COUNTY, MISSOURI

## SPECIAL PROCESS SERVER AFFIDAVIT

I, Adam Elliott, being duly sworn and upon his/her oath states that I meet all of the following qualification as Special Process Server:

(1) Be at least eighteen (18) years of age;

(2) Be a citizen of the United States of America;

(3) Have a high school diploma or equivalent;

(4) Not have pled guilty to or been convicted of a felony or a misdemeanor involving moral turpitude;

(5) Not be a fugitive from justice or currently charged with a felony or a misdemeanor involving moral turpitude;

(6) Not be related to or employed by a party in the action;

(7) Not have been disqualified to act as a special process server within the preceding twelve (12) months, and;

(8) If service is to be made outside the State of Missouri, authorized to serve process in the jurisdiction in which it is to be served.

Any application for the appointment of a special process server shall be in writing, shall be at the risk and cost of the party making the application and shall
state that the person to be appointed is qualified to serve process, is a private person over 18 years of age and not a party to the action. If service is sought and
served by a private person, the private person shall endorse the private person's return thereon and the return shall be by affidavit.

[signature]
Special Process Server Signature

**STATE OF MISSOURI** )
) ss.
**COUNTY OF ST. CHARLES** )

I Adam Elliott, of lawful age, upon being duly sworn on oath, deposes and states that the facts contained in the foregoing Affidavit are true and accurate according to his/her best knowledge, information and belief, and that he/she signs same as his/her free and voluntary act and deed.

[signature]

SUBSCRIBED and sworn to before me this 26 day of March, 2026.

[signature]
Notary Public/Deputy Clerk

My commission expires (Notary): Jun 04, 2028 or State Seal (Deputy Clerk):

BILLY BRANDON
Notary Public - Notary Seal
STATE OF MISSOURI
County of Jefferson
My Commission Expires: Jun. 04, 2028
Commission #24123979

Electronically Filed - ST CHARLES CIRCUIT DIV - August 17, 2026 - 04:02 PM

**IN THE ELEVENTH JUDICIAL CIRCUIT, ST CHARLES COUNTY, MISSOURI**

| Judge or Division: | **Case Number:** 2611-CC00887 | |
|---|---|---|
| Plaintiff: Nicholas A. Melton | Defendant: RVO Health, LLC | (Date File Stamp) |

# REQUEST FOR APPOINTMENT OF SPECIAL PROCESS SERVER

Comes now Plaintiff Nicholas A. Melton, pursuant to Local Court Rule 4.2.1 and at his/her/its own risk, requests the appointment of:

| Name of Process Server | Address | Telephone |
|---|---|---|
| Adam Elliott, Elliott Process LLC | 6642 Clayton Rd #106, Richmond Heights, MO 63117 | (636) 200-8059 |
| | | |

a person(s) of lawful age to serve the summons and petition in this cause on the below named parties. This appointment as special process server does not include the authorization to carry a concealed weapon in the performance thereof.

| **SERVE:** | **SERVE:** |
|---|---|
| Name: RVO Health, LLC | Name: |
| Address: 1101 Red Ventures Drive | Address: |
| City/State/Zip: Fort Mill, South Carolina 29707 | City/State/Zip: |

**Appointed as requested:**

**Cheryl Crowder,**

**Circuit Clerk**

**By** ______________________ **Date** ______________________

Deputy Clerk

Electronically Filed - ST CHARLES CIRCUIT DIV - August 17, 2026 - 04:02 PM

**IN THE ELEVENTH JUDICIAL CIRCUIT COURT**
**ST. CHARLES COUNTY, MISSOURI**

**SPECIAL PROCESS SERVER AFFIDAVIT**

I, Adam Elliott, being duly sworn and upon his/her oath states that I meet all of the following qualification as Special Process Server:

(1) Be at least eighteen (18) years of age;

(2) Be a citizen of the United States of America;

(3) Have a high school diploma or equivalent;

(4) Not have pled guilty to or been convicted of a felony or a misdemeanor involving moral turpitude;

(5) Not be a fugitive from justice or currently charged with a felony or a misdemeanor involving moral turpitude;

(6) Not be related to or employed by a party in the action;

(7) Not have been disqualified to act as a special process server within the preceding twelve (12) months, and;

(8) If service is to be made outside the State of Missouri, authorized to serve process in the jurisdiction in which it is to be served.

Any application for the appointment of a special process server shall be in writing, shall be at the risk and cost of the party making the application and shall
state that the person to be appointed is qualified to serve process, is a private person over 18 years of age and not a party to the action. If service is sought and
served by a private person, the private person shall endorse the private person's return thereon and the return shall be by affidavit.

[signature]
Special Process Server Signature

**STATE OF MISSOURI** )
) ss.
**COUNTY OF ST. CHARLES** )

I Adam Elliott, of lawful age, upon being duly sworn on oath, deposes and states that the facts contained in the foregoing Affidavit are true and accurate according to his/her best knowledge, information and belief, and that he/she signs same as his/her free and voluntary act and deed.

[signature]

SUBSCRIBED and sworn to before me this 26 day of March, 2026.

[signature]
Notary Public/Deputy Clerk

My commission expires (Notary): Jun 04, 2028 or State Seal (Deputy Clerk):

BILLY BRANDON
Notary Public - Notary Seal
STATE OF MISSOURI
County of Jefferson
My Commission Expires: Jun. 04, 2028
Commission #24123979

# Summons for Personal Service Outside the State of Missouri (Except Attachment Action)

IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>ERIN BURLISON | **Case Number: 2611-CC00887** | |
| Plaintiff/Petitioner:<br>NICHOLAS A MELTON<br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>KEVIN J DOLLEY<br>2726 S. BRENTWOOD BLVD.<br>SAINT LOUIS, MO 63144 | |
| Defendant/Respondent:<br>RVO HEALTH, LLC | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO 63301 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Employmnt Discrmntn 213.111 | | |

**The State of Missouri to**: **RVO HEALTH, LLC**
**Alias:**

**1101 RED VENTURES DR.**
**FORT MILL, SC 29707**

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

***COURT SEAL OF***

***ST. CHARLES COUNTY***

18-AUG-2026
Date

/S/ CHERYL CROWDER
Clerk

**Further Information:**

**Officer's or Server's Affidavit of Service**

I certify that:

1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is ______________________________ of ____________________ County, ______________ (state).
3. I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:
____________________________________ (name) ______________________(title).

☐ other: _______________________________________________________________.

Served at ____________________________________________________________ (address)
in __________________________ (County), ____________ (state), on ________________(date)
at __________ (time).

________________________________________ ________________________________________

Printed Name of Officer or Server Signature of Officer or Server

**Subscribed and sworn to** before me this ____ (day) ___________ (month), ______ (year).

I am: (check one) ☐ the clerk of the court of which affiant is an officer.

☐ the judge of the court of which affiant is an officer.

☐ authorized to administer oaths in the state in which the affiant served the above summons (use for out-of-state officer).

☐ authorized to administer oaths. (use for court-appointed server)

*(Seal)*

________________________________________

Signature and Title

**Service Fees**

Summons $____________

Non Est $____________

Mileage $____________ (______ miles @ $.______ per mile)

**Total $____________**

See the following page for directions to officer making return on service of summons.

Case Number: 2611-CC00887

**Directions to Officer Making Return on Service of Summons**

A copy of the summons and petition must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and petition when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and petition and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and petition personally to the individual or by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person at least 18 years of age residing therein, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and petition to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

The officer or other person receiving a summons or other process shall serve the same and make return of service promptly. If the process cannot be served it shall be returned to the court within 30 days after the date of issue with a statement of the reason for the failure to serve the same; provided, however, that the time for service thereof may be extended up to ninety days from the date of issue by order of the court.

**IN THE ELEVENTH JUDICIAL CIRCUIT, ST CHARLES COUNTY, MISSOURI**

| Judge or Division: | **Case Number:** 2611-CC00887 | |
|---|---|---|
| Plaintiff: Nicholas A. Melton | Defendant: RVO Health, LLC | (Date File Stamp) |

# REQUEST FOR APPOINTMENT OF SPECIAL PROCESS SERVER

Comes now Plaintiff Nicholas A. Melton, pursuant to Local Court Rule 4.2.1 and at his/her/its own risk, requests the appointment of:

| Name of Process Server | Address | Telephone |
|---|---|---|
| Adam Elliott, Elliott Process LLC | 6642 Clayton Rd #106, Richmond Heights, MO 63117 | (636) 200-8059 |
| | | |

a person(s) of lawful age to serve the summons and petition in this cause on the below named parties. This appointment as special process server does not include the authorization to carry a concealed weapon in the performance thereof.

| **SERVE:** | **SERVE:** |
|---|---|
| Name: RVO Health, LLC | Name: |
| Address: 1101 Red Ventures Drive | Address: |
| City/State/Zip: Fort Mill, South Carolina 29707 | City/State/Zip: |

ALL RISKS TO
REQUESTING PARTY
SO APPOINTED:
/S/ Cheryl Crowder 11:32 am, Aug 18, 2026

**Appointed as requested:**

**Cheryl Crowder,**

**Circuit Clerk**

**By** ______________________________ **Date** ______________________

Deputy Clerk

**IN THE ELEVENTH JUDICIAL CIRCUIT COURT**
**ST. CHARLES COUNTY, MISSOURI**

**SPECIAL PROCESS SERVER AFFIDAVIT**

I, Adam Elliott, being duly sworn and upon his/her oath states that I meet all of the following qualification as Special Process Server:

(1) Be at least eighteen (18) years of age;

(2) Be a citizen of the United States of America;

(3) Have a high school diploma or equivalent;

(4) Not have pled guilty to or been convicted of a felony or a misdemeanor involving moral turpitude;

(5) Not be a fugitive from justice or currently charged with a felony or a misdemeanor involving moral turpitude;

(6) Not be related to or employed by a party in the action;

(7) Not have been disqualified to act as a special process server within the preceding twelve (12) months, and;

(8) If service is to be made outside the State of Missouri, authorized to serve process in the jurisdiction in which it is to be served.

Any application for the appointment of a special process server shall be in writing, shall be at the risk and cost of the party making the application and shall
state that the person to be appointed is qualified to serve process, is a private person over 18 years of age and not a party to the action. If service is sought and
served by a private person, the private person shall endorse the private person's return thereon and the return shall be by affidavit.

[signature]
Special Process Server Signature

**STATE OF MISSOURI** )
) ss.
**COUNTY OF ST. CHARLES** )

I Adam Elliott, of lawful age, upon being duly sworn on oath, deposes and states that the facts contained in the foregoing Affidavit are true and accurate according to his/her best knowledge, information and belief, and that he/she signs same as his/her free and voluntary act and deed.

[signature]

SUBSCRIBED and sworn to before me this 26 day of March, 2026.

[signature]
Notary Public/Deputy Clerk

My commission expires (Notary): Jun 04, 2028 or State Seal (Deputy Clerk):

BILLY BRANDON
Notary Public - Notary Seal
STATE OF MISSOURI
County of Jefferson
My Commission Expires: Jun. 04, 2028
Commission #24123979

Electronically Filed - ST CHARLES CIRCUIT DIV - September 03, 2026 - 04:54 PM

IN THE ELEVENTH JUDICIAL CIRCUIT
ST. CHARLES COUNTY CIRCUIT COURT
STATE OF MISSOURI

| | | |
|---|---|---|
| NICHOLAS A. MELTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2611-CC00887 |
| | ) | |
| RVO HEALTH, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF FILING**

COMES NOW Plaintiff Nicholas A. Melton, by and through undersigned counsel, and hereby files the Return of Service of Summons served upon Defendant RVO Health, LLC.

Respectfully Submitted,

By: *_/s/ Kevin J. Dolley_*

Kevin J. Dolley, #54132
HKM Employment Attorneys, LLP
7382 Pershing Avenue, Suite 1W
St. Louis, MO 63130
Phone/Fax: (314) 642-6577
kdolley@hkm.com

*Counsel for Plaintiff Nicholas A. Melton*

Electronically Filed - ST CHARLES CIRCUIT DIV - September 03, 2026 - 04:54 PM

# Summons for Personal Service Outside the State of Missouri (Except Attachment Action)

IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>ERIN BURLISON | **Case Number: 2611-CC00887** | |
| Plaintiff/Petitioner:<br>NICHOLAS A MELTON<br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>KEVIN J DOLLEY<br>2726 S. BRENTWOOD BLVD.<br>SAINT LOUIS, MO 63144 | |
| Defendant/Respondent:<br>RVO HEALTH, LLC | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO 63301 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Employmnt Discrmntn 213.111 | | |

**The State of Missouri to: RVO HEALTH, LLC**
**Alias:**

**1101 RED VENTURES DR.**
**FORT MILL, SC 29707**

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

***COURT SEAL OF***

***ST. CHARLES COUNTY***

18-AUG-2026
Date

/S/ CHERYL CROWDER
Clerk

**Further Information:**

Electronically Filed - ST CHARLES CIRCUIT DIV - September 03, 2026 - 04:54 PM

Case Number: 2611-CC00887

## Officer's or Server's Affidavit of Service

I certify that:

1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is PROCESS SERVER of NEW CASTLE County, DE (state).
3. I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________, a person at least 18 years of age residing therein.

☑ (for service on a corporation) delivering a copy of the summons and petition to: THE CORPORATION TRUST COMPANY, AS AGENT, ACCEPTED BY ROBIN HUTT-BANKS (name) MANAGING AGENT EMPLOYED AT REGISTERED AGENT (title).

☐ other: ______________________.

Served at 1209 ORANGE ST., WILMINGTON, DE 19801 (address) in NEW CASTLE (County), DE (state), on 09/03/2026 (date) at 2:45 PM (time).

GILBERT DEL VALLE
Printed Name of Officer or Server

[signature]
Signature of Officer or Server

**Subscribed and sworn to** before me this 3 (day) SEPTEMBER (month), 2026 (year).

I am: (check one)
☐ the clerk of the court of which affiant is an officer.
☐ the judge of the court of which affiant is an officer.
☑ authorized to administer oaths in the state in which the affiant served the above summons (use for out-of-state officer).
☐ authorized to administer oaths. (use for court-appointed server)

*(Seal)*

[signature]
Signature and Title

KEVIN STEWART DUNN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires OCTOBER 8, 2027

**Service Fees**

Summons $__________
Non Est $__________
Mileage $__________ (______ miles @ $.______ per mile)
**Total** $__________

See the following page for directions to officer making return on service of summons.

Electronically Filed - ST CHARLES CIRCUIT DIV - September 03, 2026 - 04:54 PM

**Brandywine Process Servers, LLC**
PO Box 1360
Wilmington, DE 19899-1360 US
+13024752600
brandywineps@comcast.net
www.brandywineps.com

# INVOICE

**BILL TO**
HKM EMPLOYMENT
ATTORNEYS LLP
7382 PERSHING AVENUE
1W
ST. LOUIS, MO 63130

**INVOICE #** 5830
**DATE** 09/03/2026
**DUE DATE** 10/03/2026
**TERMS** Net 30

| DATE | CASE CAPTION | AMOUNT |
|---|---|---|
| 09/03/2026 | NICHOLAS A MELTON V RVO HEALTH, LLC | |
| | RVO HEALTH, LLC | 99.00 |
| | COPY CHARGES | 7.00 |

BALANCE DUE **$106.00**

**Ways to pay**

Pay DISCOVER VISA AMEX BANK

View and pay

TAX ID#: 39-4552423

Electronically Filed - ST CHARLES CIRCUIT DIV - September 03, 2026 - 04:54 PM

IN THE ELEVENTH JUDICIAL CIRCUIT
ST. CHARLES COUNTY CIRCUIT COURT
STATE OF MISSOURI

| | | |
|---|---|---|
| NICHOLAS A. MELTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2611-CC00887 |
| | ) | |
| RVO HEALTH, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF FILING**

COMES NOW Plaintiff Nicholas A. Melton, by and through undersigned counsel, and hereby files the Return of Service of Summons served upon Defendant RVO Health, LLC.

Respectfully Submitted,

By: *_/s/ Kevin J. Dolley_*

Kevin J. Dolley, #54132
HKM Employment Attorneys, LLP
7382 Pershing Avenue, Suite 1W
St. Louis, MO 63130
Phone/Fax: (314) 642-6577
kdolley@hkm.com

*Counsel for Plaintiff Nicholas A. Melton*

Electronically Filed - ST CHARLES CIRCUIT DIV - September 03, 2026 - 04:54 PM

# Summons for Personal Service Outside the State of Missouri (Except Attachment Action)

IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>ERIN BURLISON | **Case Number: 2611-CC00887** | |
| Plaintiff/Petitioner:<br>NICHOLAS A MELTON<br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>KEVIN J DOLLEY<br>2726 S. BRENTWOOD BLVD.<br>SAINT LOUIS, MO 63144 | |
| Defendant/Respondent:<br>RVO HEALTH, LLC | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO 63301 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Employmnt Discrmntn 213.111 | | |

**The State of Missouri to: RVO HEALTH, LLC**
**Alias:**

**1101 RED VENTURES DR.**
**FORT MILL, SC 29707**

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

***COURT SEAL OF***

***ST. CHARLES COUNTY***

18-AUG-2026
Date

/S/ CHERYL CROWDER
Clerk

**Further Information:**

Electronically Filed - ST CHARLES CIRCUIT DIV - September 03, 2026 - 04:54 PM

Case Number: 2611-CC00887

## Officer's or Server's Affidavit of Service

I certify that:

1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is PROCESS SERVER of NEW CASTLE County, DE (state).
3. I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________, a person at least 18 years of age residing therein.

☑ (for service on a corporation) delivering a copy of the summons and petition to: THE CORPORATION TRUST COMPANY, AS AGENT, ACCEPTED BY ROBIN HUTT-BANKS (name) MANAGING AGENT EMPLOYED AT REGISTERED AGENT (title).

☐ other: ______________________.

Served at 1209 ORANGE ST., WILMINGTON, DE 19801 (address) in NEW CASTLE (County), DE (state), on 09/03/2026 (date) at 2:45 PM (time).

GILBERT DEL VALLE
Printed Name of Officer or Server

[signature]
Signature of Officer or Server

**Subscribed and sworn to** before me this 3 (day) SEPTEMBER (month), 2026 (year).

I am: (check one)
☐ the clerk of the court of which affiant is an officer.
☐ the judge of the court of which affiant is an officer.
☑ authorized to administer oaths in the state in which the affiant served the above summons (use for out-of-state officer).
☐ authorized to administer oaths. (use for court-appointed server)

*(Seal)*

[signature]
Signature and Title

KEVIN STEWART DUNN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires OCTOBER 8, 2027

**Service Fees**

| | |
|---|---|
| Summons | $__________ |
| Non Est | $__________ |
| Mileage | $__________ (______ miles @ $.______ per mile) |
| **Total** | $__________ |

See the following page for directions to officer making return on service of summons.

Electronically Filed - ST CHARLES CIRCUIT DIV - September 03, 2026 - 04:54 PM

**Brandywine Process Servers, LLC**
PO Box 1360
Wilmington, DE 19899-1360 US
+13024752600
brandywineps@comcast.net
www.brandywineps.com

# INVOICE

**BILL TO**
HKM EMPLOYMENT
ATTORNEYS LLP
7382 PERSHING AVENUE
1W
ST. LOUIS, MO 63130

**INVOICE #** 5830
**DATE** 09/03/2026
**DUE DATE** 10/03/2026
**TERMS** Net 30

| DATE | CASE CAPTION | AMOUNT |
|---|---|---|
| 09/03/2026 | NICHOLAS A MELTON V RVO HEALTH, LLC | |
| | RVO HEALTH, LLC | 99.00 |
| | COPY CHARGES | 7.00 |

BALANCE DUE **$106.00**

## Ways to pay

Pay DISCOVER VISA AMEX BANK

View and pay

TAX ID#: 39-4552423